IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:                                         )

JOHN McBRIDE and                               )        CIVIL ACTION NO. 11-00649-CB
KATHY McBRIDE,
                                               )
            Appellees/Debtors,
                                               )
HOLMES MOTORS, INC.,
                                               )
            Appellant/Respondent.
                                               )

## OPINION

This matter is before the Court on appeal of the bankruptcy court's order and judgment imposing damages and attorney's fees on the appellant, Holmes Motors, Inc., for violating the bankruptcy code's automatic stay provision.  For reasons discussed below, the order is due to be affirmed, in part, and reversed, in part.

**Background**

The violation of the stay arises from  Holmes Motors' post-petition repossession of an automobile leased by debtor Kathy McBride who, along with her husband, John McBride, filed a Chapter 13 bankruptcy petition in this district on August 8, 2011.   After the repossession, the McBrides filed a motion requesting the bankruptcy court to require Holmes Motors show cause why it was not in violation of 11 U.S.C. § 362(a) ("the automatic stay").  Also, Kathy McBride sought to recover damages from Holmes Motors, Inc. for violation of the automatic stay.  The bankruptcy court held a hearing on August 31, 2011 and subsequently entered a written order. The following relevant facts are taken verbatim from that order:

> On October 23, 2010, Kathy McBride entered into a "Closed End Motor Vehicle Lease" with Holmes Motors, Inc. for the PT Cruiser.  She paid $2,000

down of which $1242 constituted a "capitalized cost reduction."  The remaining sum paid a $500 refundable security deposit, the first $185 biweekly payment and several fees and expenses.  Under the lease she was to pay $185 twice each month for 78 payments.  The lease has a $5 late fee charge for late payments. McBride's lease contains an option to purchase the vehicle after the 78 payments for $1981.51 with the payment of a $500 purchase option fee.  The lease contains a paragraph which states (in bold):

> NOTICE TO THE LESSEE:  YOU HAVE NO OWNERSHIP RIGHTS IN THE VEHICLE UNLESS AND UNTIL YOU EXERCISE YOUR OPTION TO PURCHASE(sic)

The lease states that a lessee is in default if any payment is not made which it is due.  If there is a default the lessee "authorize[s] us (Holmes) to enter any property where the Vehicle may be to take possession of it and remove it."  The lease contains a paragraph that says Holmes Motors does not "waive our rights or remedies under this lease by failing to exercise them at any time."

Holmes. . . "Collections Policy". . give to all lessees at closing. . . states:

1.      PAYMENTS ARE DUE ON THE CONTRACTUAL DUE DATE-NO EXCEPTIONS

2.      PAYMENTS ONE DAY LATE ARE SUBJECT TO IMMEDIATE REPOSESSION (sic) BY LAW , AND A $500 REPOSESSION (sic) FEE

*   *   *   *   *

4.      IF PAYMENT IS LATE, ALL REFERENCES ARE SUBJECT TO BE CONTACTED (sic).

* * * * *

6.      REPEATED SLOW PAY OR REPOSESSIONS (sic)WILL BE REPORTED TO THE CREDIT BUREAU.

After her bankruptcy filing, Ms. McBride called Holmes Motors to tell them she had filed bankruptcy and to give them her bankruptcy case number.  Her attorneys had instructed her to do so.  She called them on August 9, 2011.  According to Ms. McBride, Holmes did not take the bankruptcy case number from  her when she called.  Holmes Motors acknowledges that McBride called it, but disregarded the information because of Ms. McBride's prior calls to them with information that Holmes believed was untrue or promises that McBride never completed.  On August 10, 2011, the car was repossessed.

At filing, Ms McBride had not made her second payment in July 2011. Her first payment in July was made with a check which was returned for

nonsufficient funds.  That check was replaced but the second payment for July was not made.  The Court is unsure from the evidence if the payment due on or about August 6 was made.  Although the Court is not sure of the exact amount owed, there is no dispute that there was some default in payment at the time of the bankruptcy filing and the repossession.  McBride had been in default in January 2011 and had the car repossessed but had paid whatever had been required to have the lease reinstated.

       In their bankruptcy schedules, the McBrides listed Holmes Motors as a secured creditor with a lien on the PT Cruiser.  They did not list the lease on Schedule G which is the schedule on which executory contracts, including leases, would be listed.  The McBrides had not filed a § 521 statement of intentions at the time of the repossession.  Their chapter 13 plan listed a payment of $340 per month to Holmes Motors, Inc. at 5% for the life of the plan as payment for a debt "Secured by Collateral."

.     .     .     .

Holmes, as stated above, does not dispute that McBride called and informed it of her bankruptcy filing.  It did not believe anything she said according to the COO due to McBride's repeated untrue or unfulfilled promises and statements.  In proceeding with the repossession, Holmes also relied upon a decision by a bankruptcy judge in the Southern District of Mississippi.  Order, *In re Williams*, Case No. 11-5077-KMS (Bankr. S.D. Miss March 1, 2011) (copy not provided to court).  She had ruled that the Holmes lease was a true lease and not a security interest.

R. 15-18.[1]

The bankruptcy court considered whether the vehicle was protected by § 362(a)(3) under one of the following theories.  (1) Was the automobile itself "property of the estate"? (2) If not, was the lease "property of the estate"? or (3) If neither the automobile nor the lease was "property of the estate," was the vehicle protected as property taken "from the estate" because it was in the McBrides' possession at the time of the bankruptcy filing?  The first possibility--that the automobile was property of the estate—arose from statutory and case law recognizing that, in

---

[1] This Court has been provided with a copy of the Williams order, and it turns out that the "decision" was in reality a settlement agreement submitted as an "Agreed Order" for the bankruptcy judge's signature.

some circumstances, a lease is actually a security interest.  After examining the lease in this case, the bankruptcy court concluded that it was a "true lease" but also noted that "the debtor did have a legitimate argument as to its claim of a security interest."  (R. 20-21.)   The bankruptcy court also found that the lease itself was not the property of the estate because it was no longer in existence when the McBrides filed their bankruptcy petition.  The lease terminated upon default, and the default occurred prior to the bankruptcy filing.  Nevertheless, the court found that "because of ambiguities in the contract and the prior treatment of McBride when she defaulted, McBride had a legitimate argument as to whether the lease was terminated prepetition and, therefore as to whether the lease was property of the estate subject to he automatic stay."  (R. 21.)

Even though neither the automobile nor the lease was property of the estate, the bankruptcy court concluded that Holmes Motor's repossession of the vehicle violated the automatic stay because § 362(a)(3) also stays any action "to obtain possession of property from the estate."  The court explained that "[t]he focus is actions to take possession of property from the estate, *regardless of the property's ownership.*"  (R. 22) (emphasis added).  The court recognized two approaches to this provision:  (1) that *any* property in the debtor's possession is protected or (2) that the property must be in the debtor's possession *and* the debtor must have a good faith, colorable claim to the property.  Applying the latter, more limited, approach the court "conclude[d] that McBride did have a colorable argument that the lease was a security interest and/or that the lease had not terminated" and that Holmes Motors had violated the stay by repossessing the vehicle without the bankruptcy court's permission.  (R. 22-23.)

Next, the court assessed damages against Holmes Motor because the violation was willful.  The court made the following findings regarding willfulness:

4

. . . Holmes Motors and the debtor agree that the debtor contacted the lessor to alert it to her bankruptcy.  Holmes Motors did nothing with that information except disregard it.  Failure to inquire of the bankruptcy court whether there was a filing is not excusable after being put on notice.    Then Holmes Motor intentionally acted by repossessing McBride's car.

Holmes (sic) other excuse is that it had received an order from a bankruptcy judge in the Southern District of Mississippi that held that its lease was a true lease and did not require Holmes Motors to turn over the car to the debtor after it was repossessed prebankruptcy.  It relied on this authority to take its actions.  This was also not sufficient to make Holmes Motors actions without fault.    [ ] [O]ne bankruptcy judge's decision in the Southern District of Mississippi is not binding on a judge sitting in another state in another circuit.

(R. 23-24.)

Finally, the bankruptcy court considered whether Holmes Motors could escape punitive

damages and costs based on the "good faith" exception found in 11 U.S.C. § 362(k)(2):

Section 362(k)(2) of the Bankruptcy Code allows a creditor to escape an award of more than actual damages in a stay violation context if the creditor acted "in the good faith belief that subsection (h) [of section 362 applies to the debtor." Section 362(h) states that if a debtor fails to file a statement of intentions timely pursuant to section 521(a)(2). The stay is terminated as to all property not listed. If a creditor acts after the expiration of the filing period for the statement, then the creditor is not liable for any more than actual damages.  In this case the debtor has not filed the statement of intention as to what they intend to do with the auto lease (or security interest as they saw it before this opinion).  However the form does not need to be filed by the debtors until September 7, 2011.  Therefore, Holmes Motors acted before it could use this defense.

(R. 24-25.)

The court awarded $1068. 78 in compensatory damages  (consisting of $770.78 in rental

expenses and $298 in lost pay), $5,000 in punitive damages and $3,370.50 in attorney's fees.

The court provided the following explanation for the punitive damages award:

The sum is sufficient to be a deterrent to Holmes Motors taking actions without assessing the consequences in the future.  The sum is not so large as to constitute a financial threat to the company.  As the Fifth Circuit stated, the stay must be broadly interpreted to prevent creditor abuses.  The cost and slight delay of seeking relief from the bankruptcy court before taking questionable actions is a small cost to make the entire system work for debtors and creditors.

(R. 25.)  Holmes Motors filed this appeal from the bankruptcy court's final order.[2]

**Issues Raised**

At the outset, the Court notes that the issues have not been presented clearly or concisely. The salient issues raised by this appeal can be summarized as follows:  First, did the bankruptcy court err in determining that the McBride's had a colorable interest in the vehicle which brought it within the protection of the automatic stay?  Second, if there was a violation of the automatic stay, did the bankruptcy court err in that the violation was willful?  Third, were punitive damages appropriate? [3]

**Standard of Review**

In a bankruptcy appeal, the district court functions as an appellate court.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).  This Court reviews the bankruptcy court's decision on

---

[2] Before the bankruptcy court assessed the amount of attorney's fees and entered a final order, Holmes Motors filed a motion for leave to file an interlocutory appeal.  This Court denied that motion.

[3] Other issues raised by the appellant and appellee can be summarily addressed.  First, one issue framed by Holmes Motors mischaracterizes the bankruptcy court's ruling.  Holmes Motors asserts error in the court's "finding that Debtors (sic) 'mere possession' of property at the time of filing their Petition for bankruptcy and wrongfully identifying the Holmes Motors' vehicle as an asset" brought the vehicle within the protection of the automatic.  The bankruptcy court did not find that mere possession of the vehicle was sufficient, nor did the identification of the vehicle as an asset figure into the court's decision.  Instead, the court ruled that the McBrides' "colorable interest" along with their post-petition possession brought the vehicle within the protection of the automatic stay.

In their response brief, the McBrides attempt to interject a new issue into the appeal. They assert that the bankruptcy court erred in declaring the lease agreement a true lease.  This attack on the bankruptcy court's order by the appellee is matter that could only be raised on cross-appeal.  *See El Paso Natural Gas v. Neztsosie*, 526 U.S. 473 (1999) (matters not raised as cross-appeal cannot be addressed on appeal); *see also In re Dow Corning*, 255 B.R. 445, 542 (E.D. Mich. 2000) (plan proponents who failed to file cross-appeal not entitled to limited relief from confirmation plan).  The McBrides did not file a cross-appeal.  Therefore this Court will not disturb the bankruptcy court's finding that the agreement at issue is a true lease.

matters of law *de novo*, giving "[no] deference to that court's analysis and conclusions." *Id.* Findings of fact will not be reversed unless clearly erroneous, and [t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, [this court is] left with the definite and firm conviction that a mistake has been made." *In re Internat'l Pharm. & Discount II, Inc*., 443 F.3d 767, 770 (11th Cir. 2005).

**Legal Analysis**

### A Debtor's "Colorable Interest" in Property Triggers the Automatic Stay

The automatic stay prevents a creditor from taking any action "to obtain possession of property from the estate." 11 U.S.C. § 362(a)(3). This protects property that is in the estate at the time the petition is filed even if the debtor has no legal interest in the property. *See, e.g.*, *In re 48th Street Steakhouse, Inc.*, 835 F.2d 427 (2nd Cir. 1987) ("a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay"). As the bankruptcy court explained, some courts have held that *any* property in the debtor's possession at the time of filing is protected while other courts have taken "a more limited approach" and required that "a debtor 'should, at the very least, demonstrate some good-faith, colorable claim to or basis for possession of property in order to trigger application of the automatic stay where the estate's interest in the property arises solely through possession.'" *In re Moore*, 448 B.R. 93, 104 (Bankr. N.D. Ga. 2011) (quoting *In re Johnson*, 429 B.R. 540, 544–45 (Bankr. D.S.C. 2010)). In this case, the bankruptcy court took the more limited approach and required more than mere possession. The court found that the McBrides had demonstrated a "colorable interest" in the vehicle because they had good faith, if unsuccessful, arguments that (1) the lease was a disguised security interest and (2) the lease was not in default.

Holmes Motors' arguments on appeal do not clearly address the bankruptcy court's crucial finding that the vehicle was "property *from* the estate."  Instead, the appellant argues questions already determined in its favor, i.e. that neither the vehicle nor the lease were "property *of* the estate."  Holmes Motors also relies on *In re Lamar*, 249 B.R. 822 (Bankr. S.D. Ga. 2000), a non-controlling case involving a distinctly different set of facts.[4]  *Lamar* involved the *pre-petition* repossession of an vehicle.  The instant case involves a *post-petition* repossession. Obviously, there is little traction to a claim that the automatic stay protects possessory interest when the vehicle debtor is no longer in possession at the time the petition is filed, as was the case in *Lamar*.

**Willfulness**

Holmes Motors challenges the bankruptcy court's determination that the violation was willful.  While any violation of the stay is prohibited under § 362, damages are only awarded where the violation is "willful." A willful violation of a stay "occurs when the creditor '(1) knew the automatic stay was invoked and (2) intended the actions which violated the stay.' " *In re White*,  410 B.R. 322, 326 (Bankr. M.D. Fla. 2009).  "Willfulness is to be liberally construed to bolster the protections of the automatic stay, and is designed to ensure compliance with the stay by encouraging creditors to seek relief from the court whenever they are on notice of even a

---

[4] In its brief, Holmes Motors asserts that *Lamar* involves "the same question of law and an identical set of facts," as this case.  Neither of those assertions is correct.  More troubling to this Court is appellant's claim that "*Lamar* is binding on the lower court [i.e., the United States Bankruptcy Court for the Southern District of Alabama]."   Appellant's counsel should familiarize himself with the doctrine of *stare decisis*.  "The general rule is that a district judge's decision neither binds another district judge nor binds him, although a judge ought to give great weight to his own prior decisions.  A circuit court's decision binds the district courts sitting within its jurisdiction while the Supreme court binds all circuit and district courts. *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) (per curiam).  If a district judge's decision is not binding precedent, then it is quite obvious that the decision of a bankruptcy judge is not binding precedent.

potential stay violation."  *In re Johnson*, 501 F.3d 1163, 1173 (10th Cir. 2007) (internal

quotations and citations omitted).  "[N]otice of the filing of a petition need not be a formal notice

of the commencement of a case where the creditor has sufficient facts which would cause a

reasonably prudent person to make further inquiry."  *In re Bragg*, 56 B.R. 46, 49 (Bankr. M.D.

Ala. 1985).  Holmes Motors asserts several challenges to the bankruptcy court's willfulness

finding.

      One basis for appellant's challenge is factual.  Holmes Motors argues that it did not have

actual notice of the McBrides' bankruptcy petition because Mrs. McBride's oral notice of

bankruptcy was not credible.  The bankruptcy court rejected this argument, holding that the oral

notice was sufficient to require appellant to make further inquiry.  This factual finding is not

clearly erroneous.  The Tenth Circuit in *Johnson* affirmed a willfulness finding in similar

situation.  In that case, the bankruptcy court found a willful violation where debtor's attorney

telephoned the creditor, an automobile dealership, and informed the dealership's vice-president

of the bankruptcy.  The vice-president testified that he thought the phone call was a scam and did

not believe a bankruptcy petition had actually been filed.  The Tenth Circuit affirmed, holding

that the bankruptcy court's factual finding regarding oral notice was not clearly erroneous and

that such notice was sufficient to require the dealership to call the bankruptcy court and

determine whether a petition had been filed. *Johnson*, 501 F.3d at 1173.

      Holmes Motors also contends that it did not act willfully because it relied on an order

from a bankruptcy court in Mississippi regarding the nature of its lease agreement.   The

bankruptcy court below did not err in rejecting this argument.  According to appellant's brief on

appeal, "[t]he [Mississippi] Order stated that Holmes Motors' lease was a true lease and not a

security interest." The Mississippi Order on which appellant purportedly relied is, in reality, a

settlement agreement made part of the record.  It is entitled "Agreed Order" and states, in

relevant part:

> [T]parties have advised that they have resolved all issues at bar and that their
> settlement should be manifested by an Order of this Court; and the Court being
> fully advised in the premises finds that the parties have agreed to the following
> terms, and that the Chapter 13 Trustees (sic) does not object:
>
> 1.      The Closed End Motor Vehicle Lease between Defendant, HOLMES
> MOTORS, INC. and the Debtor . . . is a true lease and not intended as security,
> and as such is not the property of the Chapter 13 Bankruptcy Estate.

(*Errie S. Williams v. Holmes Motors*, Adv. No. 11-5005-KMS  (*In re Errie Williams*, No. 11-

50077-KMS) (Bankr. S.D. Miss. Mar. 3, 2011)).[5]  The Mississippi bankruptcy judge signed an

order acknowledging that *the parties* in that case *had agreed that the lease was a true lease*.

That agreement is not a judicial decision upon which Holmes Motors can rely to remove itself

from the automatic stay.

Appellant's two remaining arguments merit little discussion.  First, Holmes Motors

argues that the willfulness finding was in error because appellant relied on a "fair reading" of the

applicable laws when it made its decision to repossess the vehicle.  Whether  Holmes Motors

*believed* its actions were arguably permissible is irrelevant.   Specific intent to violate the law is

not required.  *Johnson*, 501 F.3d at 1172.  All that it necessary to prove willfulness is that the

creditor "knew of the automatic stay and intended the actions that constituted the violation."  *Id.*

Appellant's final argument—that Mrs. McBride's "conduct renders the vehicle exempt from the

automatic stay"--has  no bearing on the bankruptcy court's willfulness determination.[6]

---

[5] This order was not a part of the official record on appeal but has been submitted as an
exhibit to the appellant's brief.

[6] Appellant has attempted to insert an issue not raised before the bankruptcy court,
arguing that the debtors filed their petition in bad faith and, therefore, are not entitled to
bankruptcy protection.  Arguments not raised below will not be considered on appeal.  *Access*
(Continued)

**Punitive Damages**

This punitive damages aspect of this appeal raises two questions: (1) Is the decision to award punitive damages justified?[7] (2) If so, is the amount of punitive damages awarded constitutionally permissible? Because the answer to the first question is no, this Court does not reach the constitutional issue.[8] A bankruptcy court's decision to impose punitive damages, as well as the amount of damages imposed, is subject to *de novo* review. *In re Ocasio*, 272 B.R. 815, 823 (BAP 1st 2002).[9] The bankruptcy code provides that "an individual injured by any

_____

*Now, Inc. v. Southwest Airlines*, 385 F.3d 1324, 1331 (11th Cir. 2004) "The reason for this prohibition is plain: as a court of appeals, [this court] review[s] claims of judicial error in the [lower] courts. If we were to regularly address questions-particularly fact-bound issues-that lower courts never had a chance to examine, we would not only waste our resources, but also deviate from the essential nature, purpose, and competence of an appellate court." *Id.*

[7] As previously noted, the issues are presented in a rather confusing manner. For example, Holmes Motors asserts that "[t]he [bankruptcy] court exceeded the mandate of Section 362(k)(2) when it awarded both punitive damages and legal fees." (Appellant's Brf., Doc. 12, 17.) Briefly stated, § 362(k)(2) limits precludes punitive damages in certain situations and can be invoked as a defense against punitive damages only if the stay violation occurred *after* the deadline for filing the debtor's statement of intention. In this case, the repossession occurred *before* the statement of intentions was due. Appellant fails to address the bankruptcy court's finding that "Holmes Motors acted before it could use this [§ 362(k)(2)] defense."

[8] The same guideposts applied to punitive damages, in general, are also applied to an a punitive damage award for violation of the automatic stay. *In re Ocasio*, 272 B.R. 815, 825 (BAP 1st 2002) (citing *BMW of N. Amer., Inc. v. Gore*, 517 U.S. 559 (1996)). Those are: (1) the reprehensibility of the conduct; (2) the ratio of between punitive and compensatory damages; and (3) civil and criminal sanctions for comparable misconduct. *Id.*

[9] Appellant's brief incorrectly attributes this proposition to *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424 (2001), stating "The United States Supreme Court also explained that an appellate review of a Bankruptcy Court's determination that the automatic stay is a question of law and (sic) subject to *de novo* review." (Appellant's Brf., Doc. 12, 8.) *Cooper* had nothing to do with bankruptcy, and the Supreme Court in that case provided no instruction about appellate review of the automatic stay. Appellant's brief attributes a similar proposition to an Eleventh Circuit case, *Boyd v. Homes of Legend*, 188 F.3d 1294 (11th Cir. 1999) (incorrectly cited as *Void v. Homes of Legend*). That attribution is also baseless. *Boyd* has nothing to do with bankruptcy review or the automatic stay. It is impossible to fathom how any (Continued)

willful violation of a stay provided by this section shall recover actual damages, including costs

and attorneys' fees, and, *in appropriate circumstances,* may recover punitive damages."  11

U.S.C. § 362(h)(2) (emphasis added).  Thus, the initial question is whether this is an "appropriate

circumstance" for punitive damages.

It takes more than a willful violation of the stay to justify punitive damages.  *In re Hodge,*

367 B.R. 843, 848 (Bankr. M.D. Ala. 2007).  Bankruptcy courts have found punitive damages to

be appropriate where the debtor's conduct was "egregious, vindictive, malicious, or accompanied

by bad faith."  *In re Hutchings,* 348 B.R. 847, 879-880 (Bankr. N.D. Ala. 2006).  "Bankruptcy

cases in this circuit have followed [this approach] and have not awarded punitive damages

without weighty circumstances."   *In re Han*, 333 B.R. 881, 889 (Bankr. N.D. Fla. 2005).

"Decisions awarding punitive damages in this context typically consider the following factors:

(1) the nature of the violator's conduct; (2) the nature and extent of the harm to the debtor; (3) the

violator's ability to pay; (4) the motives of the violator; and (5) any provocation by the debtor."

*In re WVF Acquisition, LLC*, 420 B.R. 902, 914 (Bankr. S.D. Fla. 2009).

The bankruptcy court below cited no particular evidence as the basis for the punitive

damage award   This Court's review of the record reveals nothing in the defendant's conduct that

rises to the level of "weighty circumstances" that would justify punitive sanctions.  The

repossession was a one-time incident, as opposed to ongoing conduct.  *Cf. In re White,* 410 B.R.

322, 326-28 (Bankr. M.D. Fla. 2009) (punitive damages imposed against creditor who called

debtor and her family repeatedly for several months); *In re Hildreth*, 357 B.R. 650, 656-66

---

attorney who actually read those cases could have cited them as appellant's counsel did.  Were it
not for the fact that one case, *Ocasio*, does apply the *de novo* review standard in the bankruptcy
stay/punitive damages context, the Court would wonder whether these citations were deliberately
misleading rather than an example of extremely poor research and writing skills.

(Bankr. M.D. Ala. 2006) (creditor exhibited pattern of conduct continuing collection efforts while ignoring multiple order and notices from bankruptcy court). The harm to the debtor was purely economic--loss of pay plus the cost and inconvenience of renting a car. *Cf. In re Ocasio*, 272 B.R. at 826 (creditor threatened debtor with bodily harm); *In re Swilling*, 2008 WL 4999090 (M.D. Ala. Nov. 20, 2008) (creditor who obtained debtor's social security by forgery caused considerable and foreseeable harm). There is also no evidence that the appellant was motivated by malice, vindictiveness or bad faith. *Cf. In re WVF Acquisition, LLC*, 420 B.R. at 914 (creditor maliciously shut off cable service knowing that it would bring debtor's business to a halt); *In re Hodge*, 367 B.R. at 848-49 (Bankr. M.D. Ala. 2007) (threatening to "get even" with debtor and to prosecute criminally was vindictive and malicious). In sum, the award of punitive damages is not appropriate in this case.[10]

**Conclusion**

For the reasons set forth above, this Court **AFFIRMS** the bankruptcy court's award of compensatory damages and legal fees but **REVERSES** the bankruptcy court's award of punitive damages. This matter is **REMANDED** to the bankruptcy court for further action consistent with this order.

**DONE** and **ORDERED** this the 21st day of May, 2012.

s/*Charles R. Butler, Jr.*
**Senior United States District Judge**

---

[10] Having found no conduct, harm or motivation that would justify the award of punitive damages the Court need not consider the remaining factors both of which--the appellant's ability to pay and any provocation by the debtor—generally favor the creditor.